UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESTER HEUSCHEN, JR., Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| SIBANYE GOLD LIMITED, NEAL FRONEMAN, and CHARL KEYTER, | |
| Defendants. | |

Plaintiff Lester Heuschen, Jr. ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sibanye Gold Limited ("Sibanye" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Sibanye securities between April 7, 2017 through June 26, 2018, both dates inclusive (the "Class Period"), seeking to

recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Sibanye operates as a precious metals mining company in South Africa, Zimbabwe, and the United States.  Sibanye is incorporated and has its principal executive offices in the Republic of South Africa.  Sibanye's American depositary receipts ("ADRs") trade on the New York Stock Exchange ("NYSE") under the ticker symbol "SBGL".

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Sibanye's safety protocols were inadequate to prevent a high rate of worker death; (ii) Sibanye's mining supervisors routinely forced Company employees to work in unsafe and unlawful conditions; (iii) the foregoing issues would foreseeably subject Sibanye to heightened regulatory oversight; and (iv) as a result, Sibanye's public statements were materially false and misleading at all relevant times.

4.      On June 13, 2018, pre-market, *The Mercury* published an article entitled, "Mine puts profits before lives – claim," stating that Sibanye's mining supervisors forced and intimidated miners to work in dangerous conditions.

5.      On this news, Sibanye's share price fell $0.07, or 2.6%, to close at $2.56 on June 13, 2018.

6.      On June 26, 2018, *Bloomberg* reported that "another worker was killed at [Sibanye's] Driefontein operation in South Africa, bringing the total deaths at the company's

mines this year to 21." According to the article, Sibanye "accounts for nearly half of the 46 people reported killed at South African mines in 2018 and is already the subject of an investigation by the chief inspector of mines."

7.      On this news, Sibanye's share price fell $0.31, or 10.99%, to close at $2.51 on June 26, 2018.

8.      Then, on June 27, 2018, pre-market, *Bloomberg* reported that Citigroup Inc. cut its recommendation on Sibanye's stock to neutral from buy, citing the Company's "track record" from "an environmental, social and governance perspective, as well as the underlying investment risk that it holds[.]"

9.      On this news, Sibanye's share price fell $0.26, or 10.36%, to close at $2.25 on June 27, 2018.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Sibanye's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Sibanye is incorporated in South Africa, with principal executive offices located at Libanon Business Park, 1 Hospital Street Libanon, Westonaria 1780, South Africa.  Sibanye's ADRs trade on the NYSE under the ticker symbol "SBGL."

17.     Defendant Neal Froneman ("Froneman") has served at all relevant times as the Company's Chief Executive Officer ("CEO").

18.     Defendant Charl Keyter ("Keyter") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

19.     The Defendants referenced above in ¶¶ 17-18 are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Sibanye's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to

4

the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Sibanye operates as a precious metals mining company in South Africa, Zimbabwe, and the United States.  Sibanye's operations in South Africa include four underground and surface gold operations in the West Witwatersrand region and the southern Free State province, as well as underground and surface PGM operations in the Bushveld Igneous Complex.

### Materially False and Misleading Statements Issued During the Class Period

22.    The Class Period begins on April 7, 2017, when Sibanye filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2016 (the "2016 20-F"). The 2016 20-F was signed by Defendant Keyter. The 2016 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.    In the 2016 20-F, Sibanye stated that it was committed to keeping its workforce safe, providing in relevant part:

OUR APPROACH TO SAFETY, HEALTH AND WELLBEING
Our employees are our most important asset. In order to keep our workforce safe and healthy, we focus on compliance and systematically reducing employees' exposure to risk. We are therefore committed to:

- identifying and ranking risks

- finding technical and procedural engineering solutions in terms of a risk mitigation hierarchy to eliminate risk completely, if possible

- controlling risk at source

- minimising risk factors

- monitoring risk exposure

- providing personal protective equipment

24.     On April 2, 2018, Sibanye filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendant Keyter. The 2017 20-F contained signed SOX certifications by the Individual Defendants attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25.     Sibanye stated in its 2017 20-F that safety was "paramount," providing in relevant part:

> Safety is our principal value and we continue to focus significant effort and attention as well as resources on ensuring that our employees are able to work in a safe and conducive environment.
>
> * * *
>
> The safety, health and wellbeing of our employees, the most vital of our stakeholders, is paramount. In addressing these three aspects, our approach is based on Sibanye Stillwater's CARES values –commitment, accountability, respect, enabling and safety – and our safety, health and wellbeing tree.

26.     The statements referenced in ¶¶ 22-25 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

(i) Sibanye's safety protocols were inadequate to prevent a high rate of worker death; (ii) Sibanye's mining supervisors routinely forced Company employees to work in unsafe and unlawful conditions; (iii) the foregoing issues would foreseeably subject Sibanye to heightened regulatory oversight; and (iv) as a result, Sibanye's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

27.     On June 13, 2018, pre-market, *The Mercury* published an article entitled, "Mine puts profits before lives – claim," stating that Sibanye's mining supervisors forced and intimidated miners to work in dangerous conditions.  The article reported, in part:

> The tragic deaths of four gold miners at a Johannesburg mine have been blamed on a shift manager, accused of putting profits before lives.
>
> Angry workers claimed that the manager forced them to work in an abandoned underground shaft where they choked to death from a combination of gas and poor ventilation.
>
> The bodies of four miners have since been retrieved, while the fifth worker has not been accounted for. Rescue operations at Sibanye Gold's Kloof Ikamva shaft in Westonaria, west of Joburg, were still under way yesterday.
>
> The Department of Mineral Resources yesterday said it would meet the mine management to address the soaring deaths of mineworkers.
>
> * * *
>
> The Association of Mineworkers and Construction Union (Amcu) was even more scathing when it said Sibanye Gold operations had become killing fields.
>
> "The union questions why a manager allegedly forced employees to go underground, even though the Department of Mineral Resources had reportedly issued an order to stop production.
>
> "The shaft in question was reportedly ordered to be closed in terms of section 54 of the Mine Health and Safety Act because of excessive temperature and inadequate ventilation," said Amcu president Joseph Mathunjwa.
>
> * * *

The company said it would investigate if the deceased were also working with illegal miners.

*The Mercury's* sister newspaper, The Star, interviewed several miners from Shaft 4, where the incident took place, and they blamed their supervisors for allegedly bending the rules by forcing them to work in dangerous conditions.

They claimed that about two weeks ago another crew had refused to work in the same shaft, citing poor ventilation and unbearable heat.

The crew's supervisor and overseer were suspended as a result, and a new crew was brought in on Monday to work at the same shaft.

"The manager then asked the new crew of six to access the shaft. Their safety representative refused to go in because of the heat, which was above 37°C, while other guys went down unwillingly. They felt intimidated, that they would lose their jobs if they did not obey their bosses' orders," said a miner.

Sibanye Gold faced similar accusations of intimidation of workers when seven miners were killed in a seismic event at the company's Driefontein operations last month.

It was alleged that a shaft manager forced them to work less than two hours after ground shook not far from the area where the fatal seismic event occurred.

During their memorial service, the company's chief executive, Neal Froneman, said workers would not be fired for refusing to work in dangerous places. "All employees have the right to withdraw from unsafe conditions, and we expect that right to be exercised responsibly whenever necessary. There is no excuse for ignoring unsafe conditions or behaviours," said Froneman at the time.

But National Union of Mineworkers (NUM) chairperson of the health and safety committee, Peter Bailey, yesterday said workers would be charged with insubordination if they refused to take orders from their superiors.

The unions have called on Mineral Resources Minister Gwede Mantashe to act decisively against mining houses that fail to ensure staff safety.

28.     On this news, Sibanye's share price fell $0.07, or 2.6%, to close at $2.56 on June 13, 2018.

29.     On June 26, 2018, *Bloomberg* reported that "another worker was killed at [Sibanye's] Driefontein operation in South Africa, bringing the total deaths at the company's

mines this year to 21." According to the article, Sibanye "accounts for nearly half of the 46 people reported killed at South African mines in 2018 and is already the subject of an investigation by the chief inspector of mines."

30.    On this news, Sibanye's share price fell $0.31, or 10.99%, to close at $2.51 on June 26, 2018.

31.    Then, on June 27, 2018, pre-market, *Bloomberg* reported that Citigroup Inc. cut its recommendation on Sibanye's stock to neutral from buy, citing the Company's "track record" from "an environmental, social and governance perspective, as well as the underlying investment risk that it holds[.]"  The *Bloomberg* article stated, in part:

Sibanye's Rising Death Toll Exposes Investment Risk, Citi Says

• Gold miner took unsustainable measures to boost profit: Citi
• Sibanye disputes Citi's analysis; plans risk-management study

By Felix Njini

(Bloomberg) -- Sibanye Gold Ltd.'s deteriorating safety record and rising death toll undermines its investment case and risks triggering intervention by the South African government, according to Citigroup Inc.

"We find it difficult to recommend that investors should buy a company with a track record like this, both from an environmental, social and governance perspective, as well as the underlying investment risks that it holds," Citi analysts Johann Steyn and Shashi Shekhar, said in a note on Wednesday. They cut their recommendation on the stock to neutral from buy.

The latest fatality, at the Khomanani operation on Tuesday, means Sibanye accounts for almost half of the 46 people killed at South African mines this year. The gold producer is already the subject of an investigation by the chief inspector of mines, and there is the potential for further action, Citi said.

"There is a real risk that the Department of Mineral Resources could intervene, which may have a negative impact on profits at a time when its balance sheet is already strained," the analysts said.

Citi said it's concerned that Sibanye has taken "unsustainable short-term measures" to boost earnings, including cutting capital spending and reducing

management oversight, as well as mining high-grade pillars that were previously considered "too dangerous" to exploit. Steyn declined to comment further.

32.     On this news, Sibanye's share price fell $0.26, or 10.36%, to close at $2.25 on June 27, 2018.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Sibanye securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Sibanye securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Sibanye or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Sibanye;

- whether the Individual Defendants caused Sibanye to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Sibanye securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as

a class action.

40.    Plaintiff will rely, in part, upon the presumption of reliance established by the

fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Sibanye  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Sibanye securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a

presumption of reliance upon the integrity of the market.

42.    Alternatively, Plaintiff and the members of the Class are entitled to the

presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

*of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information,

as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
Against All Defendants)**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Sibanye securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Sibanye securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Sibanye securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Sibanye's finances and business prospects.

47.     By virtue of their positions at Sibanye , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Sibanye, the Individual Defendants had knowledge of the details of Sibanye's internal affairs.

49.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Sibanye.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Sibanye's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Sibanye securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning Sibanye's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Sibanye securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50.    During the Class Period, Sibanye securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Sibanye securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Sibanye securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Sibanye securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

53.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.    During the Class Period, the Individual Defendants participated in the operation and management of Sibanye, and conducted and participated, directly and indirectly, in the conduct of Sibanye's business affairs.  Because of their senior positions, they knew the adverse non-public information about Sibanye's misstatement of income and expenses and false financial statements.

55.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Sibanye's financial condition and results of operations, and to correct promptly any public statements issued by Sibanye which had become materially false or misleading.

56.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Sibanye disseminated in the marketplace during the Class Period concerning Sibanye's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Sibanye to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Sibanye within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Sibanye securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of Sibanye.  By reason of their senior management positions and/or being directors of Sibanye, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Sibanye to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Sibanye and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Sibanye.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 6, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
       ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

***Attorneys for Plaintiff***

18